LENTZ & GENGARO LLP
By: George M. Holland, Esq. (0916)
347 Mount Pleasant Avenue
West Orange, New Jersey 07052
(973) 669-8900
Fax: (973) 669-8960
Email: gholland@lentzgengaro.com
Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| D.H. and S.H., on behalf of M.H., | |
| Plaintiffs, | |
| vs. | |
| SOMERSET HILLS REGIONAL BOARD OF EDUCATION, | COMPLAINT |
| Defendant. | |

Plaintiffs, D.H. and S.H. (David and Sharon Hornaday), residing at 82 Old Army Road, Bernardsville, New Jersey 07924, in the County of Somerset, on behalf of their minor daughter, M.H. (M.H. Hornaday), say, by way of Complaint against Defendant, the Somerset Hills Regional Board of Education, located at 25 Olcott Avenue, Bernardsville, New Jersey 07924, in the County of Somerset:

**JURISDICTION AND VENUE**

1. The Court has jurisdiction over this matter for the appeal of a Order rendered by the New Jersey Office of Administrative Law as well as for the recovery of attorneys' fees and costs pursuant to the Individuals With Disabilities Education Improvement Act, also referred to as the Individuals With Disabilities Education Act (the "IDEA"), 20 U.S.C.A. §1400, et seq. and

the New Jersey Special Education Regulations pertaining to same, N.J.A.C. 6A:14-1.1, et seq., as well as Section 504 of the Rehabilitation Act of 1973, 29 U.S.C.A. §794 ("Section 504").

2. Venue is proper in the United States District Court for the District of New Jersey pursuant to 28 U.S.C.A. §1391(a) in that a substantial part of the events giving rise to the claims set forth in the Complaint occurred in the District of New Jersey.

## PARTIES

3. Plaintiffs are the mother and father of M.H. (Date of Birth: 10/20/04).

4. For all times relevant herein, Defendant has been the agency with primary responsibility for providing M.H. with a free, appropriate public education since this dispute arose, and continuously since then, pursuant to the IDEA.

## BACKGROUND

5. M.H. is severely disabled, having been diagnosed as having a Rett Syndrome, a Pervasive Developmental Disorder, which is caused by a genetic mutation of the MECP2 gene, which is found on the X chromosome that mostly affects females.

6. M.H. also suffers from severe Hypotonia (a medical term used to describe decreased muscle tone), moderate to severe Asthma, Petit Mal Seizures, Gastrointestinal issues and a Feeding Disorder.

7. Due to M.H.'s disability, she cannot speak and she has poor eye contact, behavior problems, motor skill problems, socialization problems and she is considered cognitively delayed.

8. In spite of M.H.'s disabilities, she is capable of performing far above her current levels of performance.

2

9. M.H. has significant, unrealized potential that can only be developed through an appropriate educational program, with appropriate special education and related services, designed to meet her unique needs.

10. M.H. is protected by Section 504 due to the severity of her disabilities and because Defendant's school district is publicly funded.

11. Plaintiffs approached Defendant's school district in the Summer of 2007, approximately 4 months prior to her 3rd birthday, in accordance with the IDEA, in order to have her determined eligible for special education and related services, in accordance with the IDEA, so that an Individualized Education Program ("IEP") could and would be created and be in place for her at the time she turned 3 years of age in October 2007.

12. Although Defendant's Child Study Team was provided ample time to make a determination as to M.H.'s eligibility for special education and related services and create an IEP for her at the time she turned 3 years of age in October 2007, in violation of the IDEA, no IEP was actually created for her by that point in time, meaning no educational placement, with appropriate special education and related services, was offered to her at that time.

13. Because Defendant's Child Study Team was unwilling to fulfill its legal obligation, under the IDEA, to create an IEP for M.H. by the time she turned 3 years of age in October 2007, at that time, it agreed to continue the related services she was previously receiving through "Early Intervention," which consisted of her receiving the following: (a) 180 minutes per week of 1:1 speech therapy; (b) 180 minutes per week of 1:1 occupational therapy; (c) 180 minutes per week of 1:1 physical therapy; (d) 420 minutes per week of 1:1 therapy using the

principles of Applied Behavior Analysis ("ABA therapy"); and (e) 60 minutes per week of 1:1 direct instruction by a special education teacher.

14. In February 2009, Plaintiffs entered into a Stipulation of Withdrawal Without Prejudice (the "2009 Settlement") of a then pending special education case, based on a Petition for Due Process that had been filed on their behalf by their legal counsel against the Defendant.

15. Pursuant to the 2009 Settlement, the Defendant agreed to provide M.H. the following home-based, related services which she had been receiving through Early Intervention, with the exception of the 1:1 direct instruction by a special education teacher. Defendant also agreed that the above-referenced services would all continue to be provided by the vendors that were currently providing said services to M.H. as of the date of the settlement so long as the vendors complied with applicable regulations, policies and procedures to qualify as "Defendant-approved" vendors. Defendant also agreed that it would take appropriate steps to get M.H. placed at an out-of-district, private school placement called the McAuley School for Exceptional Children (the "McAuley School"), located in Watchung, New Jersey, stating in September 2009.

16. Because the 2009 Settlement was "without prejudice," no claims to attorney's fees and costs or any other causes of action were waived or released by either party against the other.

17. Pursuant to an IEP dated April 6, 2009 prepared for M.H., it was confirmed that she would be offered placement by Defendant's school district at the McAuley School, to commence in September 2009. Pursuant to this same IEP, Defendant's school district offered to continue M.H.'s above-referenced home-based services unabated through the end of August 2009 – until she could start at the McAuley School. Unfortunately, in that IEP, even though the

4

school district did offer her the related services of a 1:1 aide during the school day, transportation with an aide, she was not offered any ABA therapy whatsoever. She was also offered a drastically reduced amount of speech, occupational and physical therapy: (a) 120 minutes per week of 1:1 speech therapy; (b) 90 minutes per week of 1:1 occupational therapy; and (c) 135 minutes per week of 1:1 physical therapy.

18.  Defendant's school district's decision to eliminate all ABA therapy from M.H.'s IEP and drastically reduce her speech, occupational and physical therapy was based upon any evaluations, formal or informal, of M.H. in violation of the IDEA, and it sought no input from either Plaintiffs or the professionals providing those special education and related services to her.

19.  On April 15, 2009, Plaintiffs filed a Request for Due Process against the Defendant, Pro Se, objecting to the decision made by the school district to eliminate all ABA therapy from M.H.'s IEP and drastically reduce her speech, occupational and physical therapy, while making it clear that we were accepting having M.H. attend the McAuley School, as is permitted under the IDEA.

20.  On August 31, 2009, on the record, in the Office of Administrative Law, through its legal counsel, Defendant agreed to send M.H. to the McAuley School, as is required by the IDEA, and provide her all of the related services outlined in her April 6, 2009 IEP, but it still refused to continue to provide her any ABA therapy and it would not provide the same level of speech, occupational and physical therapy she had been receiving.

21.  On September 4, 2009, on behalf of Plaintiffs, their legal counsel filed a Motion for Emergency Relief to seek protection under the "Stay-Put Provision," in accordance with the

5

IDEA, to avoid having all ABA therapy eliminated and her speech, occupational and physical therapy drastically reduced while the litigation between the parties continues.

22. In the Motion for Emergency Relief filed by Plaintiffs, they demanded that Defendant be forced to provide M.H. the following home-based, related services while this case is pending as her "Stay-Put Placement:" (a) 60 minutes per week of 1:1 speech therapy; (b) 90 minutes per week of 1:1 occupational therapy; (c) 45 minutes per week of 1:1 physical therapy; and (d) 420 minutes (7 hours) per week of 1:1 therapy using the principles of ABA therapy.

23. While the Motion for Emergency Relief was pending, Defendant consented to continue M.H.'s home-based, related services only through September 18, 2009, but after that date they ceased to provide any services beyond what was stated in the April 6, 2009 IEP.

24. On October 2, 2009, after oral argument had taken place the previous week, the Administrative Law Judge assigned to the case, Honorable Ana C. Viscomi, A.L.J., issued a Order denying Plaintiffs' Motion for Emergency Relief, ruling that: (a) Plaintiffs had waived their right to protection under the Stay-Put Provision in the 2009 Settlement; and (b) that they had not met the requirements to obtain emergency relief in accordance with the New Jersey Special Education Regulations pertaining to the IDEA.

## COUNT I

25. Plaintiffs repeat and incorporate herein each and every allegation contained in paragraphs 1 through 24, inclusive, of this Complaint, as though set forth in full herein.

26. Only an "explicit" waiver of the protection of the Stay-Put Provision under the IDEA will prevent said provision from being automatically enforceable.

6

27. According to the 2009 Settlement, because the 2009 Settlement was without prejudice no waiver of any legal rights was made by either party, much less one applying to the Stay-Put provision under the IDEA, Plaintiffs did not explicitly or even implicitly waive their right to Stay-Put Protection.

28. According to prevailing case law in the Third Circuit, a party seeking protection under the Stay-Put Provision need not satisfy the requirements of being granted emergency relief.

29. For all of the foregoing reasons, Judge Viscomi's Order must be reversed by this Court.

30. For all of the foregoing reasons, Defendant must be compelled by this Court to continue providing M.H. the special education and related services it previously had been providing to her, at the levels previously provided to her, pending the outcome of the litigation between the parties pursuant to the Stay-Put Provision.

31. For all of the foregoing reasons, Defendant must be compelled by this Court to reimburse Plaintiffs for all the costs that they have been forced to incur to pay to have M.H. provided the special education and related services it previously had been providing to her, at the levels previously provided to her, pending the outcome of the litigation between the parties, in accordance with the IDEA.

**WHEREFORE**, Plaintiffs demand Judgment against Defendant from this Court: (1) reversing Judge Viscomi's Order; (2) compelling Defendant to continue providing M.H. the special education and related services it previously had been providing to her, at the levels previously provided to her, pending the outcome of the litigation between the parties; (3) compelling Defendant to reimburse Plaintiffs for all the costs that they incurred to continue

providing M.H. the special education and related services it previously had been providing to her, at the levels previously provided to her, pending the outcome of the litigation between the parties; (4) for any such other relief as this Court determines necessary and proper.

## COUNT II

32.  Plaintiffs repeat and incorporate herein each and every allegation contained in paragraphs 1 through 31, inclusive, of this Counterclaim, as though set forth in full herein.

33.  Plaintiffs incurred legal fees and costs pursuing their case against Defendant in the Office of Administrative Law.

34.  Plaintiffs will continue to incur legal fees and costs pursuing their case against Defendant, in this Court for the following: (1) seeking a reversal of Judge Viscomi's Order; and (2) to obtain reimbursement of legal fees and costs incurred in pursuing their case against Defendant in the Office of Administrative Law.

35.  Plaintiffs are entitled to recover any and all legal fees and costs incurring from Defendant incurred for the following: (1) pursuing their case against Defendant in the Office of Administrative Law; and (2) pursuing their case against Defendant, in this Court, seeking a reversal of Judge Viscomi's Order, and pursuing their case against Defendant, in this Court, to obtain reimbursement of legal fees and costs in pursuing their case against Defendant in the Office of Administrative Law through the completion this case.

**WHEREFORE**, Plaintiffs demand Judgment against Defendant from this Court: (1) compelling Defendant to reimburse Plaintiffs for any and all legal fees and costs incurred in pursuing their case against Defendant in the Office of Administrative Law; (2) compelling Defendant to reimburse Plaintiffs for any and all legal fees and costs incurred in pursuing their

case against Defendant, in this Court, seeking a reversal of Judge Viscomi's Order, and to obtain reimbursement of legal fees and costs incurred in pursuing their case against Defendant in the Office of Administrative Law; and (3) for any such other relief as this Court determines necessary and proper.

LENTZ & GENGARO LLP<br>
Attorneys for Plaintiffs<br><br>
By: s/George M. Holland<br>
George M. Holland

Dated: October 7, 2009

## CERTIFICATION AS TO LOCAL CIVIL RULE 11.2

Plaintiffs, by their attorney, hereby certify that the matter in controversy is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding.

By: s/George M. Holland<br>
George M. Holland

Dated: October 7, 2009